# United States Court of Appeals
## For the First Circuit

U.S. DISTRICT COURT
DISTRICT OF N.H.
FILED

2009 FEB -5 A 11: 21

No. 08-1557

ANTONIO KING,

Plaintiff, Appellee,

v.

CESAR RIVAS, Individually,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Steven J. McAuliffe, U.S. District Judge]

Before

Boudin, Stahl and Lipez,

Circuit Judges.

John J. Davis with whom Pierce, Davis & Perritano, LLP was on brief for appellant.
Michael J. Sheehan for appellee.

February 2, 2009

**BOUDIN**, **Circuit Judge**.  Rule 68 of the Federal Rules of Civil Procedure provides for cost shifting where a defendant offers to settle, the offer is rejected and the plaintiff thereafter prevails but recovers less than the offer.  The difficult question in this case is how the rule should be read and applied in cases where multiple defendants make a joint offer to settle the whole case--a situation that the rule's drafters may not have thought through and certainly did not explicitly resolve.

In the underlying case, Antonio King sued seven New Hampshire corrections officers and employees in federal district court in New Hampshire, alleging constitutional violations while King was a pretrial detainee in the Hillsborough House of Corrections.  The gist of the claims was that he had been falsely accused of threatening a guard and was thereafter mistreated during his confinement.  The five-count complaint charged procedural due process and eighth amendment violations, varying with the defendant.

According to King's later testimony, on July 14, 2002, while the inmates were out of their cells for recreation, Cesar Rivas, an on-duty corrections officer in a medium security wing of the jail (Unit 2D), radioed for assistance, falsely reporting that he was in jeopardy of being taken hostage.  Rivas identified King, along with eight other inmates, as having threatened him.  Three

-2-

other corrections officers then took King to the jail's segregation unit (Unit 2B), known as "the hole".

Soon after he was taken to the hole, a disciplinary officer charged King with disciplinary violations based on Rivas' report. After a hearing, which took place on July 19, King was sentenced to thirty days in segregation beginning August 9. After King's thirty day sentence was complete, a classification officer placed him in administrative segregation, which resulted in his spending his remaining time at Hillsborough in the hole. He was released on December 23, 2002.

While in the hole, King was allowed only a mattress, sheet, pillow, and prison uniform; everything else was forbidden (including personal hygiene products and toilet paper). King had to ask guards to turn on the water to flush the toilet, drink, or wash his hands--requests not always satisfied promptly. He was allowed out of his cell only once every three days, shackled, in order to shower and was subject to frequent strip searches. These conditions remained throughout his time in segregation.

This description does not fully capture the grim and unsanitary circumstances of the confinement. A more complete description is provided in decisions stemming from the litigation that followed. See, e.g., Surprenant v. Rivas, 424 F.3d 5, 10-11 (1st Cir. 2005). Although not involving direct brutality, the conditions were of a kind that might--or might not--lead a jury to

-3-

take a harsh view of the defendants, particularly Rivas if the jury
concluded that he had falsely reported the events.

After King filed his law suit, the defendants, jointly
represented, invoked Rule 68 and made an offer on January 24, 2005,
to settle with King for a single payment of $10,000, together with
attorney's fees and costs as determined by the court.  The rule, in
pertinent part, provides:

> At any time more than 10 days before trial
> begins, a party defending a claim may serve
> upon the adverse party an offer to allow
> judgment to be taken against him for the money
> or property or to the effect specified in the
> offer, with costs then accrued . . . .  If the
> judgment finally obtained by the offeree is
> not more favorable than the offer, the offeree
> must pay the costs incurred after the making
> of the offer.

Fed. R. Civ. P. 68.[1]

By its terms, the defendants' offer was one to settle the
entire law suit for a fixed sum and did not apportion the sum among
the seven defendants.  The offer expired under the rule when King
did not respond within ten days.   On January 6, 2006, King
voluntarily dismissed his claims against four of the seven
defendants.   After a five day trial involving the remaining three,
a jury found only Rivas liable and awarded King $1 in nominal
damages and $500 in punitive damages.

---

[1]This was the text of the rule at the time of the offer.
Minor stylistic changes took effect on December 1, 2007.

-4-

On King's motion, the trial judge ordered a new trial on compensatory damages; the judge agreed that because the jury had necessarily found that Rivas had falsely accused King and led to his wrongful punishment, the $1 nominal damage award was contrary to the substantial weight of the evidence. In the new trial on damages, the newly selected jury awarded King $5,000 in compensatory damages, giving him a total award of $5,500.

Other inmates have brought their own law suits based on the same incident. In Surprenant v. Rivas, No. 02-391JD, 2004 WL 1858316 (D.N.H. Aug. 17, 2004), aff'd, 424 F.3d 5, decided prior to King's trial, a jury found that Rivas and two other defendants also named by King had violated Jason Suprenant's constitutional rights, awarding nominal and punitive damages against both Rivas and another defendant, but only nominal damages against a third, totaling $20,503; Surprenant also recovered $29,754.50 in attorney's fees and $3,897.72 in costs. Id. at *5.

In Paladin v. Rivas, No. 05-cv-079-SM, 2007 WL 2907263 (D.N.H. Sept. 28, 2007), which followed King's trial, a jury found that two other defendants--but not Rivas--had violated inmates Paladin and West's constitutional rights. The jury awarded the plaintiffs nominal damages against both liable defendants and $50,000 each in punitive damages against one of the defendants; it also awarded Paladin alone $50,000 in compensatory damages against the other defendant. Id. at *1. Plaintiffs received $33,952.50 in

attorney's fees and $1,247.32 in costs. Id. at *13. In other cases, the inmate-plaintiffs settled before trial.

After King's second trial on compensatory damages, he moved as the prevailing party for attorney's fees and costs under 42 U.S.C. § 1988 (2006). Rivas objected, arguing that the plaintiff's $5,500 judgment was less than the $10,000 offer, and that Rule 68 therefore shifted costs to King; accordingly, Rivas sought to recover his attorney's fees and costs. The district court held that Rule 68 did not apply because the $10,000 offer had not been apportioned among the defendants, and it awarded King attorney's fees and costs for his claims against Rivas under section 1988. King v. Rivas, No. 04-cv-356-SM, 2008 WL 822236, at *3-9 (D.N.H. Mar. 26, 2008).

Rivas has now appealed, arguing that the district court misconstrued Rule 68, and our review of such a question is de novo. See NEPSK, Inc. v. Houlton, 283 F.3d 1, 5 (1st Cir. 2002). Rivas' position is straightforward: the defendants' $10,000 offer to King for a joint settlement is deemed to have been rejected; King's ultimate recovery from all the defendants named in his suit was only $5,500; thus, costs shift to King.

King responds that the offer was not apportioned and therefore did not allow him to determine how much Rivas was offering to settle the claims against Rivas alone, so the rule is not triggered. But the offer was hardly "ambiguous": by its terms

it was an offer to settle the whole case, and only the whole case, for $10,000--plus costs and attorney's fees to date. So King is saying either that a package offer alone does not trigger the rule or, in the alternative, must be accompanied by nominal allocations.

Rule 68 was written in the singular--referring to "liability of one party to another"--and nowhere explains how a joint offer by several defendants should be treated. But federal law provides, in line with common sense, that "unless the context indicates otherwise--words importing the singular include and apply to several persons, parties or things." 1 U.S.C. § 1 (2006); see Johnston v. Penrod Drilling Co., 803 F.2d 867, 869-70 (5th Cir. 1986). Compare Duke v. Conchise County, 938 P.2d 84, 90 (Ariz. Ct. App. 1997) (finding use of singular "unambiguous" in cost rule, rendering it inapplicable to joint offer).

In addition, Rule 68's purpose of encouraging settlements[2] strongly supports its adaptation to multi-defendant cases, and courts have so assumed. Marek v. Chesny, 473 U.S. 1, 3-4 (1985) (joint offer by three co-defendants); Delta Air Lines, Inc. v. August, 450 U.S. 346, 350 n.5 (1981) (assuming rule's applicability to multi-defendant litigation). But how to apply the

---

[2]Possibly this attributed purpose is over-emphasized, ignoring Rule 68's roots in common law practice relating to the right of tender. R. Bone, "To Encourage Settlement": Rule 68, Offers of Judgment, and the History of the Federal Rules of Civil Procedure, 102 Nw. U.L. Rev. 1561 (2008). But the emphasis on settlement has been absorbed in later Advisory Committee Notes and by Supreme Court decisions, and so constrains us as well.

rule to joint offers is not addressed by the rule and is ultimately a matter of judicial adaptation of the rule in light of policy.

Of course, tactically a plaintiff would prefer an apportioned set of offers that would allow him to pick and choose; indeed, an offer judged ample as to one defendant could provide resources to continue the litigation against others. And plaintiffs will often gain valuable bargaining information by learning which defendants are most eager to settle.

But in multi-defendant cases where a single employer is likely to pay the bill (such as one against a company and several of its officers), a full settlement will often be the only one that makes sense for the company--the likely payor--and the only one that will be forthcoming. As the Supreme Court noted in Marek, "[i]f defendants are not allowed to make lump-sum offers that would, if accepted, represent their total liability, they would understandably be reluctant to make settlement offers." 473 U.S. at 6-7.

Often, where there is one harm or a related set of harms, a plaintiff too will be primarily concerned with what the case as a whole "is worth." In any event, each defendant is entitled to say that he will not settle unless the plaintiff settles with all. And how the individual defendants contribute to the settlement fund (in practice, the institution may well pay for everyone directly or

-8-

by indemnification) ought ordinarily not be plaintiff's concern in
deciding whether or not to settle.

    The circuit courts have been divided about variations on
the central problem.  The Seventh Circuit has insisted that to
trigger Rule 68 in multi-defendant cases an offer must contain
amounts allocated to each defendant, Harbor Motor Co., Inc. v.
Arnell Chevrolet-Geo, Inc., 265 F.3d 638, 648-49 (7th Cir. 2001);
but it did so citing a prior case, Gavoni v. Dobbs House, Inc., 164
F.3d 1071 (7th Cir. 1999), involving joint plaintiffs, who present
quite different problems;[3] and the result in Harbor Motor was more
than justified on a different ground, namely, that the verdict in
favor of the co-defendant was being reversed, Harbor Motor, 265
F.3d at 644-45, so the plaintiff's total package could in the end
well exceed the package offer.

    Similarly, the Fifth Circuit also said the failure to
allocate was fatal; but it did so on facts where it was otherwise
plainly right to refuse to shift costs because the judgment against
the defendant exceeded the offer--when combined with a settlement
received from the other.    Johnston, 803 F.2d at 870.    The

---

[3]Package offers to multiple plaintiffs are not by a group (who
first must agree to make the offer and how to fund it) but to a
group--a group in which division of the package among them is an
issue that they may not be able to resolve and where, in addition,
one plaintiff might be willing to accept the offer but another not.
The case law on these issues is inconclusive.    See Amati v.
Woodstock, 176 F.3d 952, 957-59 (7th Cir.) (Posner, J.), cert.
denied, 528 U.S. 985 (1999); Lang v. Gates, 36 F.3d 73, 75 (9th
Cir.), cert. denied, 513 U.S. 1017 (1994).

apportionment notion was invoked to reach a correct result but one properly reached by saying that the joint offer was less than the total amount actually recovered by the plaintiff.

The Third Circuit, by contrast, approved use of Rule 68 cost shifting where an unapportioned offer had been made that exceeded the amount recovered; it said that the suit against multiple defendants involved joint liability and an indemnification contract, although it is not clear how much this mattered to the court nor why it should matter. Le v. Univ. of Pa., 321 F.3d 403, 408 (3d Cir. 2003). And district courts have employed Rule 68 without difficulty in multiple defendant cases where the offer was not apportioned and the total recovery was less than the unapportioned offer.[4]

Assuming that defendants are entitled to trigger Rule 68 by a package offer, an allocation requirement makes no sense. Any such allocation is nominal since it does not represent an actual offer by an individual defendant that can be accepted by the plaintiff independently of the package. Still less is there reason to believe that, if the package offer is accepted, individual defendants will bear their apportioned shares, all of which may well be paid by the employer or otherwise divided.

---

[4] Jolly v. Coughlin, No. 92 CIV. 9026 (JGK), 1999 WL 20895, at *5-6 (S.D.N.Y. Jan. 19, 1999); Stewart v. Sonoma County, 634 F. Supp. 773, 775-76 (N.D. Cal. 1986). But see Doe v. Keala, 361 F. Supp. 2d 1171, 1178-80 (D. Haw. 2005); Jones v. Fleetwood Motor Homes, 127 F. Supp. 2d 958, 970-71 (N.D. Ill. 2000).

-10-

Nor is such a nominal allocation necessary to a package offer. If a trial results in a judgment encompassing all of the defendants, apportionment is beside the point: it is easy to see whether the total recovery exceeded the package offer. And, where some defendants settle or are dropped, as in this case, it is still easy enough to ask whether plaintiff's total recovery exceeded the total offer, treating a settlement as a recovery and a dismissed or prevailing defendant as a zero recovery.[5]

Requiring a nominal allocation in what is solely a package offer confuses form with substance: separate offers require allocation because they can be separately accepted; but with a package offer there is no allocation because there are no separate offers. By its language Rule 68 does not suggest a nominal allocation requirement, and it is almost impossible to see how such an allocation would be made where, as here and in many cases, potential liabilities of claims and defendants have some overlap.

Nor is it clear that such a nominal allocation would serve plaintiffs' interests. Imagine a case where the package of recoveries exceeds the package offer but some of the awards

---

[5]In some situations there will be no way to determine comparability--for example, if a claim against one defendant has yet to be tried. Cf. Harbor Motor, 265 F.3d at 644-45. But see Stewart, 634 F. Supp. at 775-76. But in those cases defendants simply will not recover costs, as it is the defendant's burden to establish comparability. See, e.g., Reiter v. MTA N.Y. City Transit Auth., 457 F.3d 224, 231 (2d Cir. 2006), cert. denied, 549 U.S. 1211 (2007).

-11-

exceeded the nominal allocation (assuming one had been required) and some were below. In that case, the plaintiff might well prefer comparison of the total amount of the joint offer to the aggregate recovery, as opposed to comparing the nominal allocations to separate recoveries and shifting costs as to some, but not all, of the defendants.

So we agree with the outcomes in the Seventh and Fifth Circuit decisions (Harbor Motor and Johnston) because comparability was impossible in the first case and favored the plaintiff in the second, but not the putative rationales adopted by those courts, and we align ourselves with the Third Circuit, save that we do not see why it matters whether liability was joint or several or how the defendants were related: a package offer is simply to be taken on its own terms and compared with the total recovery package.

At least two district courts have followed this approach, seemingly without difficulty. See note 4, above. And, perhaps more important, many states have counterparts to Rule 68 and, although there is some variance in wording of their rules, most treat apportionment as unnecessary to package offers by multiple defendants to a single plaintiff. Kidwell, Application of State Offer of Judgment Rule--Apportionment Issues in Multiple Party

Setting, 125 A.L.R. 5th 193, 246-56 (2005) (collecting cases from twenty-seven states).[6]

Although this reading of Rule 68 seems to us straightforward, the outcome in this particular case is not entirely welcome. Unlike many state counterparts, Rule 68 operates only in favor of defendants; courts ordinarily award costs to the prevailing party, 28 U.S.C. § 1920 (2006); Fed. R. Civ. P. 54(d), but Rule 68 makes them mandatory in favor of defendants where the recovery failed to exceed the offer. But traditional costs under section 1920--e.g., transcript fees and the like--have been relatively modest, which explains why Rule 68 was for some time almost ignored.

However, the Rule 68 stakes were raised when in Marek, a sharply divided Supreme Court held--seemingly at odds with common law practice--that "costs" under Rule 68 included attorney's fees, where (as here under section 1988) the underlying statute permits them as part of costs allowed to a prevailing party. 473 U.S. at 7-11. Further, where attorney's fees are allowed, the statutes sometimes include attorney's fees "as costs" and other times allow costs "and" attorney's fees, avoiding Marek; but Marek is the law and we are bound by it.

_____

   [6]It appears that only two states have gone the other way, id. at 256-60, and in one instance where a court held otherwise the substantive rule was simply revised to make apportionment unnecessary. Id. at 257-58; Chavez v. Sievers, 43 P.3d 1022, 1027-28 (Nev. 2002).

-13-

In this circuit, <u>Marek</u>'s consequences have been limited because this court, like several other circuits, holds that it does not permit an award of attorney's fees <u>to a defendant</u> under Rule 68;[7] but <u>Marek</u> can (and in this case, does) cut off post-offer attorneys fees <u>for the plaintiff</u> where recovery does not exceed the offer. Such fees are likely to greatly dwarf what are normally called costs and, of course, their denial affects the incentives to bring suits on behalf of indigent plaintiffs.

Denial of post-offer attorney's fees under <u>Marek</u> seems fair enough where the plaintiff was unreasonable in rejecting an adequate defense offer--whether proffered by an individual defendant or in package form from several. But an offer may be reasonably rejected and then the jury prove much stingier than might be expected; that was perhaps the case here and, if so, the outcome may seem unfair. Compare <u>Surprenant</u>, 2004 WL 1858316, at *5; <u>Paladin</u>, 2007 WL 2907263, at *1, 13.

Such outcomes could be avoided if courts could read into Rule 68 a discretionary power of the judge not to allow costs where the result would be unfair. But Rule 68 uses the term "must,"

---

[7]<u>Crossman</u> v. <u>Marcoccio</u>, 806 F.2d 329, 334 (1st Cir. 1986), <u>cert. denied</u>, 481 U.S. 1029 (1987). Other circuits--including the Third, Fifth, Seventh, Eighth and Ninth--have also limited fee shifting in this fashion. <u>See, e.g.</u>, <u>Harbor Motor</u>, 265 F.3d at 646-47. <u>But see</u> <u>Jordan</u> v. <u>Time, Inc.</u>, 111 F.3d 102, 105 (11th Cir. 1997). Rivas has not seriously argued to us that he is entitled to post-offer attorney's fees, and <u>Crossman</u> clearly states that "Rule 68 can never require prevailing civil rights plaintiffs to pay defendants' post-offer attorney's fees." 806 F.2d at 334.

-14-

Delta emphasized the rule's language, 450 U.S. at 351-52, and efforts to modify Rule 68 in various ways have given rise to bitter controversy.    Nor has plaintiff suggested that the district court had any such discretion.

But the problem results from the interaction of Rule 68's seemingly mandatory phrasing and the Marek decision, and it is wholly  independent of whether package offers require allocation. Circumstances shape rules; but in the end the rules must be sound, and there is no reason to think that package offers are any more likely to produce doubtful outcomes than do ordinary single-defendant offers.    Reform of Rule 68 itself is beyond our competence.

The order denying relief under Rule 68 is vacated and the matter remanded for further proceedings consistent with this decision.    On remand, Rivas is entitled under Rule 68 to costs incurred after the Rule 68 offer but no attorney's fees. King, as the prevailing plaintiff, is presumptively entitled to attorney's fees and costs accrued prior to the Rule 68 offer.    Each party shall bear their own costs on appeal.

It is so ordered.

-15-